UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MATTHEW WILKE MORGAN,

        Plaintiffs,

  vs.

VALLEY STATE PRISON, et al.,

        Defendants.

**1:20-cv-00029-ADA-GSA-PC**

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS BE GRANTED IN PART, WITHOUT LEAVE TO AMEND**
**(ECF No. 30.)**

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS**

## I.    BACKGROUND

Matthew Wilke Morgan ("Plaintiff") is a former state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On December 26, 2019, fifteen plaintiffs, including Plaintiff Matthew Wilke Morgan, filed a Complaint commencing this action against Valley State Prison (VSP), et al., for subjecting them to adverse conditions of confinement in violation of the Eighth Amendment by serving substandard food in Kosher meals at VSP. (ECF No. 2.)

On January 7, 2020, the court issued an order severing the fifteen plaintiffs' claims and opening new cases for individual plaintiffs. (ECF No. 1.)  Each of the fifteen plaintiffs was ordered to file an amended complaint in his own individual case within thirty days.  (Id.)  On January 31, 2020, Plaintiff filed the *First* Amended Complaint in this case.  (ECF No. 10.)

On July 13, 2021, the Court screened the First Amended Complaint and issued an order requiring Plaintiff to either: 1) notify the Court he is willing to proceed only with the claims found cognizable by the Court; or 2) file a Second Amended Complaint.  (ECF No. 16.)  On August 5, 2021, Plaintiff notified the Court that he was willing to proceed only with the claims found cognizable by the Court.  (ECF No. 17.)

This case now proceeds with the First Amended Complaint, against defendants Warden Raythel Fisher, Jr., Officer Paez, and Culinary Staff Members Anguiano, Chapa,[1] Lucero, Marquez, Cruz, and Moosbauer[2] ("Defendants") for violation of RLUIPA, violation of the First Amendment Free Exercise Clause, and unconstitutional conditions of confinement in violation of the Eighth Amendment; against defendant Warden Raythel Fisher, Jr. for failure to protect Plaintiff from harm to his health from the Kosher foods served to him, in violation of the Eighth Amendment; and against defendant Culinary Staff Member Moosbauer for retaliation in violation of the First Amendment.  (ECF No. 10.)[3]

On March 14, 2022, Defendants filed a motion to dismiss this case under Federal Rules of Civil Procedure 12(b)(6).  (ECF No. 30.)  On April 14, 2022, Plaintiff filed an opposition to the motion.  (ECF No. 34.)  On April 28, 2022, Defendants filed a reply to the opposition.  (ECF No. 36.)  Defendants' motion is deemed submitted.  Local Rule 230(*l*).

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff is currently out of custody. The events at issue in the First Amended Complaint allegedly took place when Plaintiff was incarcerated at VSP in the custody of the California Department of Corrections and Rehabilitation (CDCR).

Plaintiff's allegations follow:[4]

---

[1] Sued as Chapas.

[2] Sued as Moosebaur.

[3] On November 15, 2021, the Court issued an order dismissing all other claims and defendants from this action.  (ECF No. 22.)

[4] The allegations presented here summarize Plaintiff's allegations in support of claims found cognizable in the First Amended Complaint, as reflected in the Court's November 15, 2021 order. (ECF No. 22.)

1. Rotten, spoiled, and otherwise unfit for human consumption food is being served in the Kosher diets. From 2016 to the present time, the meals are regularly served halfcooked/prepared – in particular, meat. When brought to the attention of the Culinary Supervisor Cook (CSC) and CSC II staff, the meals are not replaced.

Weekly, the Shabbat dinner is served with spoiled meat. The meat is supposed to be vacuum sealed but is served to Plaintiff open and with mold growing on it. When eaten, the meat causes illness, and Plaintiff has suffered sickness from being served these meats by Defendants. Similar sickness is caused by other meats when served uncooked or opened.

The turkey served in lunches is unfit for human consumption. It has been denatured by having bone ground into it. The sharp and relatively large bone shards cause damage to Plaintiff's teeth and lacerations to Plaintiff's mouth and throat.

The Kosher meal stock is delivered in a manner that causes the frozen food to spoil. It is taken from the refrigerated delivery truck and left unrefrigerated in the open sun and out in the elements at the docking area for entire shifts. Staff at the warehouse/central kitchen and culinary staff do not want to inventory the meals upon arrival. After approximately ten hours, the items are finally inventoried and re-frozen.  Upon need of the meals, they  are again left out in the elements and sun as they are transferred, where they spoil further and are refrigerated again for serving on the following day.

The internal components of the meals are open, spoiled, and otherwise contaminated. Items that are sealed, such as applesauce, cream cheese, chips, bagels, and fruit cups, are either opened by bacterial growth or by mechanical means such as crushing and then allowed to fester. When revealed to CSC staff by Plaintiff, no correction follows.

Items in the Kosher meals are stolen by inmate culinary workers. When this problem is taken directly to CSC staff by Plaintiff, Plaintiff is told, "Too bad," and left without the stolen parts of the meal. In addition, when stolen items are reported to custody staff, threats of rules violations reports being issued against Plaintiff is used as a tool of reprisal and threat, to prevent further speech on the issue. Threats of violence by inmate workers against Plaintiff is also used, and correctional and custodial staff refuse to protect Plaintiff from the threats of violence.

Culinary workers intentionally wear their serving gloves to the restroom and touch their "dirty dick" with their hands prior to serving the meals. CSC and custodial staff refuse to address the issue.

2. Food is transported, opened, and cooked in shared ovens and carts that are used for non-Kosher foods. Kosher foods must be double-sealed or they are contaminated. However, daily the seals on the food are breached, either by failures during a transportation process, such as crushing and popping open of the meals, or by intentional actions of persons stealing the contents of meals. These meals are served to Plaintiff and rendered non-Kosher. These meals are cooked in ovens used to cook non-Kosher food, even at the same time, rendering the food non-Kosher.

The sole Jewish worker, when objecting to this practice, is told by his supervisor, defendant Moosebaur, to "get into the oven" while it is still hot.  Defendant Moosebaur openly states that his grandfather was a German SS, wishing that all the Jews had been killed in the Holocaust.

Then the food is transported in shared carts and stored in the same shared carts with the meals open, served at the same time and placed with the non-Kosher food. The Kosher-only oven was redirected for use for regular meals, so all meals are cooked together and the Kosher oven has not been replaced.

3. The culinary workers are not trained in the procedures mandated by the California Retail Food Code, nor by a Rabbi (necessary to serve Kosher food). The issue of training has been raised repeatedly and ignored by VSP administration as well as by the CSC staff (Defendants). The procedures for Kosher foods change every few days, perhaps not "officially," but in effect. Actual procedures are ignored and cause Plaintiff to be served non-Kosher and contaminated food.

4. Kosher meals are served in communal areas, wherein the tables are unclean both ritually and literally. The same dirty rags are used to clean the non-Kosher food and then used to clean the Kosher Diet Program (KDP) tables (when they exist), leaving chunks of non-Kosher meals smeared across the tables daily. The promised Kosher utensils are not provided and Plaintiff is required to cook many items because they are served uncooked/unprepared, but

Plaintiff is not permitted by correctional staff and VSP administration to return the item to his housing unit to prepare it.

The separation of Glatt (meat) and Dairy requires the use of separate utensils, and the separation of Passover Kosher from annual/regular Kosher meals requires separate utensils. Cleaning of plastic utensils is unfeasible and therefore disposable utensils are supposed to be issued daily by Defendants but are not, further creating a barrier to the observance of Kosher by Plaintiff.

On fasting days when Plaintiff receives his meals for the conclusion of the fast (three meals issued at one time), Plaintiff is instructed by both correctional and CSC staff to eat all the meals during the fasting hours or discard the meals. In this way, Plaintiff is not permitted to observe fasting holidays.

5. When foods are rendered non-Kosher, CSC staff refuse to replace the meal. When the meal is uncooked/unprepared/frozen, CSC staff refuse to replace the meal. In both scenarios, custodial staff refuses to allow a call for a supervisor by use of threats and intimidation. Both hot dinner and breakfast trays are served frozen. Items that are not to be frozen (refrigerate-only items such as mayonnaise or cream cheese, other fluid items such as applesauce or jelly that when frozen explode in the meals and cannot be eaten, like a soda placed into a freezer) are served daily but are inedible and not replaced, leaving Plaintiff with less of a meal than is reported on the menu.

While the hexure (Kosher certification) of the meals is considered Kosher by some, it does not meet the full standards of Orthodox Kosher. The meals are delivered with tape that reads, "If tape is removed, Kosher status may be voided." This tape is disturbed on at least six (6) cases of meals per pallet, the contents of which are damaged and opened at the institution warehouse. Main kitchen staff refuse to fix the issue despite repeated efforts by Plaintiff to fix the problem. Plaintiff is then served the non-Kosher meals by culinary Defendants.

6. The served foods do not match the approved menu foods, neither by name nor quantity. Three-ounce bagels have been permanently replaced by 2-ounce or 2.5-ounce bagels. Replacements are the usual occurrence, and the very limited variety of foods is worsened when

the few items are replaced with duplicates from the previous day. For example, on bagel day the bagels are stolen by culinary staff (inmates, despite efforts by Plaintiff to have the  correct meal served) and replaced with the peanut butter and jelly meal that was saved from the previous day. CSC staff allow this practice to reward their workers as an "underground regulation." The bagels and other such items like cookies are taken back to the facility yard and sold. Correctional staff allow the inmate workers to take these items back to the housing units and facility. These Defendants are responsible for Plaintiff not receiving the nutrition he should. The same is true for dinner meals at the main kitchen. Main kitchen workers consume the more palatable meals and replace them with the open and otherwise inedible meals, i.e., if the chili meal is dropped onto the floor on Monday and spilled, it is used to replace a Wednesday meal (chicken patty) after being stowed away for two days in the main kitchen. In this way the meals are otherwise contaminated. The meals that are served are calorie rich and nutrient poor. The meals are basically bread, sugar, and spoiled meat.

7. The foods served are past their expiration date and/or best-by date. All foods served in this way are poor, with mold growing on them, stale, with opened bread, exploded, waxy, etc. The foods have been taken directly to the supervisory staff – CSC, CSCII, Food Manager, Food Administrator, etc. – and in response the Plaintiff suffered retaliation. The future batches of meals no longer had dates on all the products and slowly the remaining products have had their dates removed from them. The labeling from ABC Ventures had the expiration dates removed (some of the dates were more than two (2) years past), and lot codes were issued. The food served to Plaintiff by Defendants is still bad. The individual food items do not often have a Kosher certification at all.

The meals in question are neither wholesome nor nutritious. Nutrition is absent and only empty calories remain. The fruits and vegetables that are served are non-Kosher. They are cracked, punctured, handled with dirty hands that were not washed after using the restroom, have rotten spots growing on  them, are recycled after being discarded, or otherwise inedible. Plaintiff is served this food by Defendants.

///

8. The Kosher Diet Program (KDP) is intended to allow for Kosher-observant inmates like Plaintiff to eat their meals separate from non-Kosher meals. This is an important requirement in Kashrus. The issues have been raised with correction staff and sergeants several times and as a result, Plaintiff suffered retaliation from Defendants repeatedly and the issue is not resolved. Procedures were changed to include others in the Kosher diet release to include diabetics, workers, students, and anyone who wishes to sneak out of the buildings during the release period. Even the issue of inmates sneaking out has been raised, to no avail. Defendants refuse to address the problem and there is further retaliation against Plaintiff, such as being forced to eat in contaminated areas with non-Koshers, and the forced discarding of Kosher meals and items.

Prayers, according to Orthodox law, require that persons of different faiths be elsewhere when mealtime prayers are spoken. Plaintiff is forced to be seated with the unfaithful, thus preventing him from saying the Holy and Sacred Prayers prior to meals. Meanwhile, the insurgents talk while eating, spitting out their food onto KDP participants' meals, rendering the meals non-Kosher. Regularly, Plaintiff as a KDP is required to eat with Pagan and/or "Skinhead/White Power" individuals who intentionally cause difficulties for Plaintiff. Plaintiff has raised this issue with correctional and culinary staff (Defendants), to no avail, leaving Plaintiff at risk from the hateful anti-Semitic persons at meals.

9. Plaintiff (KDP) is served whole meals and portions of regular non-Kosher meals in place of Kosher meals. Items include non-Kosher bread, etc. This is done by Defendants culinary staff and is done in particular when items from the Kosher meals are missing, as the result of the theft of those items by inmate workers, permitted by culinary staff (Defendants). So much of the Kosher food is stolen from the KDP that only non-Kosher replacements are available for Plaintiff. When replacements from the main kitchen are requested by Plaintiff, these requests are denied by both culinary staff and custodial staff (Defendants). Recently the salads that were the most nutritious parts of the Kosher diets have had the most nutritious items removed in retaliation by culinary staff for filing inmate grievances and CDCR 22's. Replacing the salad is a ball of shredded dry cabbage and two dirty radishes.

10. After multiple pleas and appeals, Plaintiff has been given repeated excuses for the open, rotten, spoiled, uncooked, frozen, spilled, non-nutritious food, including regular blame of the vendor (ABC Ventures). Yet Defendants continue to order from the same vendor for more than three years. Plaintiff has filed appeals yet continues to face roadblocks such as cancellations (VSP-19-01146, VSP-19-01285, TLR 1908537 and others). For three years, Plaintiff has been trying to resolve the issues with named Defendants culinary staff.

Requests for another supplier of Kosher foods were denied. Culinary and institutional, Statewide Religious Review Committee (SRRC), and policy staff all refused to address all these issues. Appeals to exchange rotten food were denied, appeals to have another vendor were denied, and appeals to have a back-up plan were denied. The KDP, including Plaintiff, have all collectively attempted to resolve every issue.

11. Plaintiff is an inmate. Plaintiff suffered because of Items #1-10 (written above) and at all times was housed at Valley State Prison in the custody of the California Department of Corrections and Rehabilitation and participating in the Kosher Diet Program (KDP) for reason of sincerely-held belief. Plaintiff is a Messianic Jew.

Plaintiff believes that the law of the Bible is an instruction from our Father and Creator, and that he has no choice but to adhere to the instruction given by his loving Father. The Teachings have been passed down from generation to generation starting with Moshe (Moses), whereupon they were received from God. The problems faced by Plaintiff have been caused by Defendants, each of them every day, and are accounted for from 2016 to 12/20/19. The available Rabbi, P. Gordon [not a defendant], was made aware of the problems with the KDP by Plaintiff. The Rabbi confirmed the problems and agreed to investigate. Upon his investigation, the Rabbi informed Plaintiff that he was raising the issues with the Religious Review Committee (RRC) but there has been no solution. The issues with staff were also raised, then forwarded to the Community Resource Manager (CRM), also to no avail.

1) Claim 1; U.S. Constitution, 1st Amendment:

a) Free Exercise of Religion:

Plaintiff is daily denied the ability to observe Kosher. At the time of filing, this restriction from Kosher totaled more than three years and multiple meals/violations. Defendants have each failed to provide Kosher meals as required by the U.S. Constitution, existing decisional case law, and Jewish Kosher Law. There is no alternative to eating. A person must eat to survive, and a Jew must eat only Kosher meals. No alternative readily exists for Plaintiff to receive daily Kosher meals. Plaintiff has had to throw out spoiled food.

Defendant Raythel Fisher is responsible for providing the religious needs of Plaintiff, and he has failed in this duty. Statewide Religious Review Committee (SRRC) members [not defendants] are responsible for the creation and implementation of statewide programs to meet these needs and to provide healthy meals appropriate to meet both the nutritional and religious needs of Plaintiff, yet after multiple problems,  chose year after year to retain the same vendor that had been blamed for the problems of quality and contents.

Correctional officers contributed to this denial of the right to freely exercise Plaintiff's religion in a reasonable manner. C/O Paez personally stood at the serving window and actively prevented Plaintiff from seeking replacement foods on a regular basis, using threats and retaliation to quell calls for change in active coordination with culinary staff member Anguiano.

Culinary staff Chapa, Lucero, Marquez, and especially Anguiano were the frontline refusers to replace spoiled and contaminated meals (and meals missing components) that were served to Plaintiff. While the above defendants were the  supervisors of the inmate workers, they allowed the inmate workers to knowingly grossly contaminate the Kosher meals even after being made aware of the issue by Plaintiff. Defendant Cruz refused to send replacements (meals) and allowed for the theft of items inside the Kosher meals. Defendant Moosebaur repeatedly responded to the KDP and did not resolve issues, neither in person nor in response to written inquiries. Moosebaur refused to fix issues and even claims to have eaten the rotten meat and instructed inmate Gann to eat it while watching.

b) Retaliation for:

Exercise of Religion, Free Speech, and Conspiracy

///

Plaintiff suffered retaliation for his exercise of religion, by insisting that his meals be kept Kosher and the subsequent complaints, grievances, and possibly this complaint in the near future. The retaliatory actions were done by state actors against Plaintiff because of the exercise of protected actions under the U.S. Constitution's First Amendment and were done for the purpose and did chill the exercise of that protected conduct. Defendants' actions did not serve any legitimate penological goal or interest. Several of the actions in #1-10 were done in concert with other actors (Defendants) who were not directly present at that time, but in a conspiracy to retaliate.

Officer and Defendant Paez, in response to attempts to have spoiled meals exchanged at the dining hall, used threats of rules violation reports, retaliatory searches (that factually occurred), and threats to have Plaintiff removed from KDP.

In retaliation for repeated complaints and grievances, defendant Moosebaur (a vocally proud Neo-Nazi) told his workers (including inmates such as Israel Garcia-Trevino #AY-4957 and other "line backers") that they no longer needed to wear gloves or hair nets while working with the Kosher food. In addition, the meals that should have been used as replacements for spoiled  meals were given to his favorite workers instead of being used as replacements, causing Plaintiff to be forced to either eat spoiled meals or not to eat.

The training by Moosebaur extended to Defendant Anguiano and subsequently to Anguiano's 3rd watch inmate workers. When Plaintiff tried to have spoiled meat replaced, Defendant Anguiano accused Plaintiff and other KDP inmates of fraud, requiring that every Saturday night meal be opened in front of him – yet when Plaintiff was (and is) served rotten meat, Defendant Anguiano still refused to replace the meat. This action was public and demeaned and deterred further complaints and other such speech by Plaintiff, effectively chilling the exercise of this protected conduct. The practice of Saturday public meal opening continues.

2)      Claim 2: U.S. Constitution, 8th Amendment

a) Nutritionally Deficient Diet (Kosher Diet)

Inmates are not required to choose between two rights they are entitled to exercise, i.e. choosing to observe Plaintiff's faith (Kosher) or eating nutritionally adequate meals. Plaintiff has

the absolute right to both, and defendants have a duty to provide the means. Currently, Plaintiff is suffering from a nutritionally deficient diet.

Food is a basic necessity of life and must be nutritionally adequate. The continuous deprivation of nutritious food for more than three years is not a short-term dilemma for the duration of an emergency. Each of the Defendants has an absolute duty to provide Plaintiff with nutritious diets that also comply with his religious needs. Plaintiff has instead been given a longterm diet consisting of high carbohydrate, high calorie food without adequate vitamins, minerals, healthy oils, etc., without supplementation.

Defendants have each played a role in the food chain. From the development of an inadequate menu based solely upon the number of calories and without consideration of nutrition, the use of highly processed food (reduces  the nutritional value of otherwise healthy similarly named items), and nutritionally deficient substitutions (i.e., food listed as chili lost its cheese replaced with water, beans were reduced to under 10 beans and replaced with water, diced tomatoes were replaced with a highly processed tomato paste mixed with a large volume of water devoid of nutrition.)

b) Sanitation of meals

All meals served during the times mentioned herein were both ritually contaminated, rendering them non-Kosher, and literally contaminated making them unsanitary. From the serving environment to the intentional contamination by the restroom (i.e., feces, semen, urine, etc.) and the genital sweat from the touching of the genitalia by inmate workers under the supervision of Defendants Culinary Staff, Correctional Officers, and VSP Administration. The meals are served on unclean tables, both literally and ritually. Dirty water and rags are used. The actual policy is to use one time rags (clean) and a dedicated cleaner used only for the Kosher Tables. This procedure is not followed by inmate workers, nor is it enforced by the culinary staff or custodial staff. When raised to the aforementioned defendants, retaliation ensues in the form of further barriers to religious expression.

The aforementioned conditions are dangerous to the health of Plaintiff. In particular when the "restroom type" of contamination is exposed to the food and the eating areas are made dirty

with rags and water (used to clean the floor) are the cleaning tools for the Kosher meals and areas. Illness has occurred to the Plaintiff, in particular sickness of the digestive tract caused by the unsanitary conditions of the serving and eating area of Plaintiff.

c) Mental Health

The failures of the KDP have caused great anguish and mental pain to Plaintiff. To discover that Plaintiff's meals had been repeatedly contaminated by sweaty anus residue and semen was shocking and unfathomable, while Plaintiff took on the burden of keeping Kosher, suffering nutritional deficits, trying to follow tenets of his faith and the laws of God. The incredible malpractice of Defendants in their respective roles (from either directly conducting the acts or after being made aware and failing to remedy the situation) and their failures to fulfill the daily dietary needs, and by ignoring or providing boilerplate responses to grievances and form 22's to Plaintiff and other KDP inmates, have all contributed to the great depression, anguish, and physical illnesses suffered by Plaintiff.

d) The Conditions of Confinement are Grossly Disproportionate to the Crime

As outlined above, the treatment of Plaintiff is extremely poor, unconstitutional, and egregious. No one in these United States should ever be subjected to the treatment suffered by Plaintiff. Plaintiff has suffered as described, emotionally, spiritually, and physically as a result of Defendants as described in #1-10. The conditions of confinement do not further any penological goal. The conditions were raised repeatedly by Plaintiff and KDP and were deliberately ignored. These conditions affected the daily life (and continue to do so) of Plaintiff. Plaintiff suffered anxiety, depression, damaged teeth, poor nutrition, physical illness (vomiting, diarrhea, nausea, cramps, etc.). The circumstances were permitted to continue as a coordinated effort by the Defendants in conspiracy to ignore the problems. Defendants actively conspired to allow the conditions to continue. The discriminatory  animus shown by the Defendants (with emphasis on Moosebaur) was egregious and shows example of the daily circumstances of Plaintiff's life trying to overcome the prejudice. The actions were meant to deprive Plaintiff of his equal privileges and right to nutritious food served in a sanitary manner and the ability to

observe his necessary religious tenets. The motives are clear by the actions and statement of Defendants, and Defendants' actions have resulted in injury as described by Plaintiff.

Our American society does not tolerate treatment such as the physical contamination of food as has occurred to Plaintiff. The acts of Defendants are degrading to Plaintiff and attack his dignity without cause.

3) Claim 3: U.S. Constitution 14th Amendment:

a) Significant Hardship:

Daily hunger is a significant hardship, as with nutritional deficiency. When Plaintiff cannot eat because of the food being contaminated or spoiled, it causes this hardship. The times Plaintiff does eat are essentially ineffective because the food is nutritionally deficient, loaded with unhealthy carbs and calorie dumps made from highly processed foods known to cause cancer.

Having to file this suit, spending over $400.00 collecting data and filing grievances, form 22's, arguing with Defendants, risking and suffering retaliation is a hardship. Retaliatory searches caused Plaintiff to suffer a lack of safety in his assigned housing. VSP is a dormitory setting (crowded), and when a retaliatory search is conducted, allowable property is seized from Plaintiff's cell-mates with the intent and effect of causing strife, anger, and the very real potential threat of violence against Plaintiff. Plaintiff lives in stress, anxiety, and depression, suffering from the loss of sleep and fear due to Defendants.

To supplement the diet, Plaintiff must order additional foods or trade for them as ordered from the packages or canteen. This additional financial burden and hardship is placed on Plaintiff and his family. By trying to observe Kosher laws and exercise his right of free expression, Plaintiff must endure this hardship. These rights are protected by the U.S. Constitution and cannot be taken away, so fundamental that they are inseparable no matter what process is used.

b) Discrimination:

Plaintiff has suffered discrimination from Defendants. Defendant Raythel Fisher, Jr. created policies that deny KDP such as Plaintiff the ability to eat Kosher or even sanitary food. Those who are required to eat Kosher by their faith, such as Plaintiff, suffer because of these

policies. Culinary staff fail to supervise their workers, and custodial staff refuse to admonish those found to contaminate food and actively conspire with culinary Staff (Defendants – both) to force Plaintiff to accept spoiled/contaminated food. RVR threats include refusal to obey orders, threats of inciting a riot, hunger strike initiation, and assault on staff. Muslim inmates do not suffer such prejudice and have no problems with their RMA meals.

Defendant Raythel Fisher, Jr., only allows access to the Rabbi one day a week for Plaintiff. Plaintiff has raised the issues with the Rabbi, who investigated and decided that there were legitimate problems with the KDP and forwarded those issues to the RRC, Food Manager, CRM, and Warden (Raythel Fisher, Jr.). Defendant Fisher has disallowed Shabbat (Saturday) services and refuses to accommodate Shabbat work prohibition for Plaintiff, but permits the Muslim holidays to be observed, unlike the majority of holidays required by Jewish law. Likewise accommodations are readily made for the Christian services, whereas the two days of Rabbi access was reduced to one day.

Defendant Moosebaur brags about how his family murdered the Jewish population in Germany. Moosebaur expresses his desire to "Kill all the Jews" and uses his position to intentionally disrupt the Kosher Diet Program by having the meals served to Plaintiff go rotten out in the elements, allowing his workers (with Defendant Cruz) to open and contaminate the meals while stealing the meals' contents (meals served to Plaintiff). Moosebaur tried to force another KDP to eat rotten food while he watched and laughed. Moosebaur is prejudiced and discriminatory. Defendant Anguiano likewise has taken an active role in taking away the ability of Plaintiff to eat suitable food. He was trained by Moosebaur to deny requests for replacement meals even when they are rotten, spoiled, spilled, open, contaminated, or otherwise unfit for consumption (or rendered non-Kosher). The actions of Defendants are discriminatory and resulted in the denial of protected conduct. Defendants acted in concert with one another to deter by force (Paez and Anguiano), with threats of retaliation.

When the need for fasting arrives due to a mandated religious fast, defendant Fisher disrupts this process despite approval from Sacramento (CDCR Headquarters) and the federal RTM as referenced by the D.O.M.

4) RLUIPA and First Amendment Free Exercise Claims:

      a) The aforementioned restrictions placed upon Plaintiff are barriers placed by individual decisions made by Defendants. The decisions do not serve any legitimate purpose. Allowing the contamination by the intentional spoiling of food, the prejudice and retaliation actions have no basis in legitimacy.

      b) Defendants have placed a substantial burden on Plaintiff's ability to exercise his faith and follow the tenets of his religion. There is no compelling reason to do so, and it is not in the furtherance of a government interest. It is not the "least restrictive" manner to obtain any goal other than to hate on the faithful, such as Plaintiff.

      c) Keeping Kosher (observing Kashrus) is a well-established "Central Tenet" of Plaintiff's faith. It is a mandatory requirement.

      d) Prison officials have been made well aware of the inability of Plaintiff to keep Kosher and have taken no corrective action. Defendants do not care, except to harm Plaintiff. Defendants disregard the complaints of Plaintiff except to retaliate. When Plaintiff's food is served rotten, he does not eat, and when the food is contaminated, it is only rarely exchanged. Plaintiff often does not eat, or only eats portions that are not contaminated. Plaintiff is always improperly fed. When fed, he is served nutritionally deficient food on a regular basis and is subject to discriminatory treatment by Defendants, both inmates and staff (culinary/custody).

      e) Plaintiff has suffered emotionally, physically, and spiritually. The effect that Defendants' actions have had on Plaintiff are acute and lasting.

      f) Plaintiff has a sincerely held belief that requires him to eat only Kosher. Plaintiff shares a common thread with Judaism requiring Kosher.

      As relief, Plaintiff requests monetary damages, including punitive damages, declaratory relief, and injunctive relief.

## III.    MOTION TO DISMISS UNDER RULE 12(b)(6)

      In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes,

416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969).  In addition, *pro se* pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see id.; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

### Defendants' Motion To Dismiss

Defendants bring this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) the First Amended Complaint (FAC) fails to allege sufficient facts to state a claim against any Defendant under 42 U.S.C. § 1983 or RLUIPA; (2) the requests for injunctive relief related to the Kosher Diet Program are mooted by Plaintiff's parole; and, (3) the FAC asserts a claim for retaliation under the First Amendment against Defendant Moosbauer that fails as a matter of law.

### Plaintiff's Opposition

Plaintiff argues that the First Amended Complaint is not subject to dismissal because the Court has screened it and found cognizable claims.  Plaintiff also argues that his release on parole does not moot his claims.  Plaintiff has not specifically opposed Defendants' other arguments.

## IV.   PLAINTIFF'S CLAIMS / ANALYSIS

### A.   The First Amended Complaint Is Subject to Dismissal Notwithstanding Screening by the Court

Defendants first argue that this motion to dismiss is warranted notwithstanding the Court already having screened the First Amended Complaint because the Judges in the Eastern District of California have held that Defendants have a procedural right to bring such a motion.

Defendants submit that a motion to dismiss in this case is proper because: (1) Plaintiff's claim for injunctive relief is rendered moot by his subsequent release on parole; (2) the FAC fails to allege sufficient facts to state a claim against any individual Defendant for a violation of the First Amendment Free Exercise Clause or for a violation of the Eighth Amendment for conditions of confinement; (3) none of the Defendants are established to be appropriate subjects for a RLUIPA claim for injunctive relief and such relief is otherwise mooted by Plaintiff's release on parole; (4) the FAC's retaliation claim against Defendant Moosbauer fails as a matter of law; and (5)Plaintiff's claim against Defendant Fisher is improperly based on supervisory liability and insufficiently plead.

### Discussion

Plaintiff's argument that Defendants do not have a right to bring this motion to dismiss, notwithstanding the Court's finding that Plaintiff states cognizable claims in the FAC, fails. Plaintiff cannot rely solely on the Court's screening as a basis for overcoming the motion to dismiss, as another Court in this district explained:

> Plaintiff misconstrues the nature of the preliminary screening called for by 28 U.S.C. § 1915A. A court's determination, upon screening, that a complaint may state cognizable claims does not preclude a defendant from subsequently bringing a motion to dismiss one or more of those claims under Federal Rule of Civil Procedure 12(b)(6). . . . Plaintiff cannot rely solely on the court's screening as a basis for overcoming a Rule 12(b)(6) motion.

Barker v. California Dep't of Corr. & Rehab., No. 2:13-CV-1793 KJN P, 2015 WL 3913546, at *4 (E.D. Cal. June 25, 2015), report and recommendation adopted, 2015 WL 5474307 (E.D. Cal. Sept. 16, 2015).  Defendants' argument that the Judges in the Eastern District of California have held that Defendants have a procedural right to bring such a motion has merit.  The Court agrees

that Defendants have the right to bring a motion to dismiss challenging the findings in the Court's initial screening order.

### B.   Plaintiff's Request for Injunctive Relief

Defendants argue that the injunctive relief sought by Plaintiff in the form of various revisions to policies and procedures related to the Kosher Diet Program is moot and should be dismissed because Plaintiff is now on parole from CDCR custody and his request for injunctive relief is not narrowly drawn, nor is it the least intrusive means necessary to correct the alleged violations of Federal rights, and it similarly fails to take into account the potential adverse impact on public safety of the operation of the criminal justice system as mandated by the PLRA.

In opposition, Plaintiff argues that even while on parole, he is a ward of CDCR and he seeks to protect the rights of other inmates at Valley State Prison.  Plaintiff also argues that his release from prison does not negate his right or Defendants' liability, and if the motion to dismiss is granted on the basis of his parole, it will revictimize Plaintiff simply because he was released.

Plaintiff seeks injunctive relief in the FAC in the form of various revisions to the policies and procedures related to the Kosher Diet Program (KDP). (ECF No. 10 at 26-27.)  As found in the FAC, Plaintiff has requested injunctive relief as summarized below:

> Plaintiff seeks an injunction requiring that Kosher food is handled only by observant Jewish inmates or trained civilian staff, and food handlers only handle Kosher foods and not switch between Kosher and non-Kosher duties; that KDP inmates be served separate to all other meal service and at separate tables cleaned to Kosher standards, or be allowed to eat in their housing units; that KDP inmates not be forced to choose between receiving their medication timely or receiving their meals in a Kosher manner, or forced to choose between receiving their Kosher meals properly or participation in college or other rehabilitative groups; that rotten or spoiled foods are never served to KDP participants, and that Kosher back-up meals are available at all times; that a separate environment where prayers may be done "absent the pagans" is available, allowing KDP inmates to complete their prayers and meals prior to other meal service; that all California Retail Food Codes are followed, such as including an auditor to supervise the implementation of regulations free from CDCR interference; that truly Orthodox Jewish Kosher meals are provided at all times, that are wholesome and nutritious and verified as such by a non-State/non-CDCR nutritionist; that bread and other calorie rich carbs are not provided in place of a real meal of unprocessed food; that the Kosher food be reasonably palatable and verified as such by a quorum of Jewish/KDP representatives from the various institutions across California; that the other issues with the Kosher diet as identified in this complaint be fixed; and that the this repair to be enforceable at any institution housing California State Inmates.

(ECF No. 10 at 26-27.)

When a prisoner seeks injunctive relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Pride v. Correa, 719 F.3d 1130, 1138 (9th Cir. 2013) ("When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his claim is moot"); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (finding prisoner's suit for library access to be moot upon his transfer to another prison).

Also, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

> "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."

18 U.S.C. § 3626 (a)(1)(A).

Once Plaintiff was paroled from VSP where the alleged violations occurred, any claims for injunctive relief regarding conditions at that institution became moot. Plaintiff requests injunctive relief via a court order making revisions to the policies and procedures related to the Kosher Diet Program at VSP, but he has no reasonable expectation of returning there. Therefore, because of Plaintiff's parole from VSP, he is not entitled to injunctive relief regarding conditions at VSP, and the court cannot award this form of relief. In addition, the legal principles applicable to requests for injunctive relief are well established. To prevail, the moving party must show that irreparable injury is likely in the absence of an injunction. Brooks v. Covello, 2:20-1573-WBS-DMC-P (E.D. Cal. 2021), 2021 U.S. Dist. Lexis 136254, at *6. In addition, the burden to achieve injunctive relief is particularly high when a party seeks a mandatory injunction Id. at *7. This is because this type of injunctive relief does more than preserve the status quo, it requires a party to act. Id. District courts must deny requests for mandatory injunctions unless the law and facts

clearly favor a moving party.  Id.  This is not the case here.  Finally, as one court pointed out, a prisoner was found to lack **standing** to seek injunctive relief related to prison conditions because he had been transferred to another facility.  Suarez v Beard, Case No. 15-cv-05959-HSG (N.D. Cal. 2017), 2017 U.S. Dist. Lexis 95136 at *15 (citing Wiggins v Alameda Cnty. Bd. Of Supervisors, No. C 1994 U.S. Dist. Lexis 8600 (N.D. Cal. 1994), 1994 WL 327180, at *2n.1.)  Therefore, the Court finds that all of Plaintiff's requests for injunctive relief, for the reasons stated above, should be dismissed.  However, Plaintiff's request for monetary damages is not mooted by his parole.

### C.   No Personal Participation – Defendants Chapa, Lucero, Marquez

Plaintiff fails to state any claims against the above named defendants because Plaintiff has not alleged any facts in the FAC against them personally.  Under § 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added).  Plaintiff must demonstrate that each of the defendants, through their own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77.  To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978));

As asserted by Defendants, the FAC contains a single vague allegation against Defendants Chapa, Lucero, and Marquez as individuals, alleging that they "were the frontline 'refusers' to replace spoiled and contaminated meals (and meals missing components) that were served to plaintiff" and "allowed the inmate workers to knowingly grossly contaminate the Kosher meals even after being made aware of the issue by Plaintiff."  (ECF No. 30-1 at 21:1-5

(citing ECF No. 10 at 13.))  However, Plaintiff fails to allege any facts showing individual personal conduct by any of the three individuals.  Plaintiff refers to these three named defendants collectively as "culinary workers" or "culinary staff" without distinction, or refers to them with all Defendants collectively.[5]  Plaintiff cannot state a claim against any of these named Defendants unless he demonstrates in his allegations how **each** of them individually, identified by **name**, **personally** acted or failed to act, violating Plaintiff's rights.  Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights.  Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Therefore, the Court finds that Plaintiff fails to state any claims against Defendants Chapa, Lucero, or Marquez, and these defendants should be dismissed.

### D.   **Defendants Paez, Cruz, Moosbauer, Fisher, and Anguiano**

Defendants argue that the FAC's causes of action against defendants Paez, Cruz, Moosbauer, Fisher, and Anguiano for RLUIPA, violation of the First Amendment, and violation of the Eighth Amendment, fail.  The Court shall address these arguments in discussion to follow about RLUIPA, First Amendment, and Eighth Amendment claims.

Defendants assert that throughout the FAC, Plaintiff identifies a group of Defendants as "culinary staff," "CSC," "culinary workers," or "defendants" and repeatedly refers to them collectively and without distinction with regard to their First and Eighth Amendment claims. Defendants argue that the allegations against a collective group are not sufficient to plead a cognizable cause of action against the individual Defendants.  Defendants argue that Plaintiff levels allegations without regard to any particular individual or, more critically, how his rights were denied by that specific person, but Rule 8 demands more and Plaintiff's allegations are insufficient to support Plaintiff's First and Eighth Amendment claims.

---

[5] Plaintiff refers to Defendants throughout the FAC collectively without specifying names of individual defendants, as main kitchen staff, CSC staff, CSC II staff, culinary staff, correctional staff, Defendants, culinary defendants, warehouse staff, supervisory staff, VSP administration, Sergeants, policy staff, custodial staff, correctional officers, and prison officials.  (See ECF No. 10, generally.)

### E.      RLUIPA

Prisoners' religious freedoms are protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). For a RLUIPA claim, the plaintiff-prisoner must show that the government has imposed a substantial burden on his religious exercise. A "'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise.'" San Jose Christian College v. Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004).

Money damages are not available under RLUIPA against the state or state officials sued in their official capacities, Sossamon v. Texas, 563 U.S. 277, 279, 131 S.Ct. 1651, 1655 (2011), and RLUIPA does not contemplate liability of government employees in their individual capacity. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may proceed only for declaratory or injunctive relief against defendants acting within their official capacities.

### Discussion

Defendants argue that Plaintiff has not established that defendants Anguiano, Chapa, Lucero, Marquez, Cruz, or Moosbauer are appropriate subjects of a RLUIPA claim because RLUIPA claims may only proceed for injunctive relief against defendants in their official capacity, and none of the culinary worker defendants has the authority or capacity to appropriately respond to a court order on injunctive relief, or fix the alleged issues with the Kosher meals at VSP. Plaintiff has not provided any explanation of the culinary workers' specific positions or responsibilities, or any basis for concluding that they could fix the alleged issues.

Because Plaintiff has failed to demonstrate how these Defendants could "appropriately respond to a court order on injunctive relief," and because injunctive relief was rendered moot by Plaintiff's release, Defendants argue that the RLUIPA claim should be dismissed against Defendants Anguiano, Chapa, Lucero, Marquez, Cruz, and Moosbauer.

Plaintiff brings claims in the FAC for violation of RLUIPA against all of the Defendants -- Warden Raythel Fisher, Jr., Officer Paez, and Culinary Staff Members Anguiano, Chapa, Lucero, Marquez, Cruz, and Moosbauer. However, because of Plaintiff's parole from VSP, he is not entitled to any injunctive relief regarding conditions at VSP, and the court cannot award this form of relief. This is so because an inmate's release from prison while his claims are pending generally moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action. Epps v. Grannis, Case No. 10cv1949 BEN KSC (S.D. Cal. 2013), 2013 U.S. Dist. LEXIS 135951 at *3). Moreover, once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim (Id. (citing Lee v Gurney, No. 3:08cv99, 2010 U.S. Dist. LEXIS 130493 at *10.) Therefore, Plaintiff's claims for relief under RLUIPA fail and should be dismissed with prejudice.

## F.   First Amendment Right to Free Exercise of Religion

Plaintiff brings claims in the FAC for violation of the First Amendment's Free Exercise Clause against all of the Defendants -- Warden Raythel Fisher, Jr., Officer Paez, and Culinary Staff Members Anguiano, Chapa, Lucero, Marquez, Cruz, and Moosbauer.

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987). In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders. See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd

Cir. 1970). Officials are not, however, required to supply clergy at state expense. See id. Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto, 405 U.S. 319, 322 (1972). A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of his/her religion. Vaughn v. Wegman, No. 115CV01902LJOJLTPC, 2019 WL 426142, at *4 (E.D. Cal. Feb. 4, 2019), report and recommendation adopted, No. 115CV01902LJOJLTPC, 2019 WL 10302261 (E.D. Cal. Mar. 12, 2019), aff'd, 804 F. App'x 796 (9th Cir. 2020) (citing Jones, 791 F.3d at 1031 (citing Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987), aff'd sub nom. Hernandez v. C.I.R., 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (citing Ohno v. Yasuma, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and alterations omitted)).

However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). "To ensure that courts afford appropriate deference to prison officials, . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 482 U.S. at 349. In applying this test, the court must weigh four factors: (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction.  Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner v. Safley, 482 U.S. 78, 89 (1987); see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).  A

prison regulation may therefore impinge upon an inmate's right to exercise his religion if the regulation is "reasonably related to legitimate penological interests."  Id.; Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). Furthermore, the Supreme Court has held that generally-applicable laws that incidentally burden a particular religion's practices do not violate the First Amendment. Employment Div. v. Smith, 494 U.S. 872, 878 (1990).

Moreover, *de minimis* or minor burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. See e.g., Rapier v. Harris, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

**Sincerity Test**

The "sincerity test," and not the centrality test, applies to prisoners' free-exercise claims. White v. Krantz, No. 120CV00892ADAGSAPC, 2022 WL 17093976, at *6 (E.D. Cal. Nov. 21, 2022), report and recommendation adopted, No. 120CV00892ADAGSAPC, 2023 WL 2027157 (E.D. Cal. Feb. 15, 2023) (quoting  Penwell v. Holtgeerts, 386 F. App'x 665, 667 (9th Cir. 2010) (citing see Shakur, 514 F.3d at 884–85).  Under the sincerity test, a prisoner's religious concern implicates the free exercise clause if it is (1) "sincerely held" and (2) "rooted in religious belief," rather than in secular philosophical concerns. Id. (citing Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (quotations omitted); see also Shakur, 514 F.3d at 885 (adopting Malik's formulation of the sincerity test)).  Plaintiff has alleged facts in the FAC showing that he sincerely adheres to the Jewish religion.  Plaintiff alleges that he believes that the law of the Bible is an instruction from our Father and Creator, and that he has no choice but to adhere to the instruction given by his loving Father.  He states that "[t]he Teachings have been passed down from generation to generation starting with Moshe (Moses), whereupon they were received from G-d."  (ECF No. 10 at 11:17-18.)  Thus, Plaintiff's religious concerns implicate the Free Exercise Clause.

**Plaintiff's Allegations**

Plaintiff alleges that he was coerced or forced by Defendants to violate religious requirements and Kosher laws, burdening his practice of religion.  He alleges that:

1.      He is regularly served food that <u>does not conform with Kosher laws</u> in the way it is handled, prepared, cooked, and/or served.  Food is transported, opened, and cooked in shared ovens and carts that are used for non-Kosher foods.  Meals are cooked in ovens used to cook non-Kosher food, even at the same time, rendering the food non-Kosher.  Meats and dairy foods are not separated, and some foods in meals, such as bread, are sometimes non-Kosher.

2.      Kosher foods are not double-sealed and therefore <u>are contaminated</u>. Daily, the seals on the food are breached, either by failures during a transportation process, such as crushing and popping open of the meals, or by intentional actions of persons stealing the contents of meals.  Plaintiff has been given repeated excuses for the open, rotten, spoiled, uncooked, frozen, spilled, non-nutritious food, including regular blame of the vendor (ABC Ventures).  The meals are delivered with tape that reads, "If tape is removed, Kosher status may be voided." This tape is disturbed on at least six (6) cases of meals per pallet, the contents of which are damaged and opened at the institution warehouse. Main kitchen staff refuse to fix the issue despite repeated efforts by Plaintiff to fix the problem. Plaintiff is then served the non-Kosher meals by culinary Defendants.

3.      Kosher meals are <u>served in communal areas</u>, wherein the tables are unclean both ritually and literally. The same dirty rags are used to clean the non-Kosher food and then used to clean the Kosher Diet Program (KDP) tables (when they exist), leaving chunks of non-Kosher meals smeared across the tables daily.  Prayers, according to Orthodox law, require that persons of different faiths be away while they are spoken. Plaintiff is forced to be seated with the unfaithful, thus preventing him from saying the Holy and Sacred Prayers prior to meals.

4.      The separation of Glatt (meat) and Dairy requires the use of separate utensils, and the separation of Passover Kosher from annual/regular Kosher meals requires separate utensils. Cleaning of plastic utensils is unfeasible and therefore disposable utensils are supposed to be issued daily by Defendants but are not.  The <u>promised Kosher utensils are not provided</u>.

5.     So much of the <u>Kosher food is stolen</u> from the KDP that only non-Kosher replacements are available for Plaintiff.

6.     Culinary staff Chapa, Lucero, Marquez, and especially Anguiano were the frontline <u>refusers to replace spoiled and contaminated meals</u> (and meals missing components) that were served to Plaintiff. While the above defendants were the supervisors of the inmate workers, they allowed the inmate workers to knowingly grossly contaminate the Kosher meals even after being made aware of the issue by Plaintiff. Defendant Cruz refused to send replacements (meals) and allowed for the theft of items inside the Kosher meals.  Defendant Moosebaur repeatedly responded to the KDP and did not resolve issues, neither in person nor in response to written inquiries.  Moosebaur in particular refused to fix issues and even claims to have eaten the rotten meat and instructed inmate Gann to eat it while watching.

7.     Defendants' actions did not serve any legitimate penological goal or interest.

**<u>Substantial Burden</u>**

To state a First Amendment claim for violation of free exercise of religion, Plaintiff must first allege that he has been subjected to extreme deprivation.  The point at which a temporary suspension of an inmate's legitimate religious practice in prison becomes a substantial burden is a fact-based inquiry and an open question.  Lawson v. Carney, 2017 WL 4324830, 2017 U.S. Dist. LEXIS 160272, *18 (E.D. Wa. 2017)).

Prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion.  See <u>McElyea</u>, 833 F.2d at 198.  Plaintiff has described significant deprivation from the denial of Kosher meals and violation of Kosher and other Jewish dietary laws by Defendants.  Plaintiff describes daily difficulties with exercising the tenets of his religion.  He needs to eat and has little or no choice in how his prison meals, which are supposed to be Kosher, are prepared, cooked, and served, or who he shares dining space with.  When Defendants fail to follow Kosher dietary laws, Plaintiff is **coerced into acting**

contrary to his religious beliefs.  Thus, here, Plaintiff has suffered a substantial burden on the practice of his religion.

**Individual Defendants**

To prove liability under § 1983, a plaintiff must (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), overturned on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)

1. **Fisher**

In regard to Warden Fisher, the following are applicable to the court's finding: 1) CCR 15 sec 3380(a), which states in pertinent part,  "The warden . . . of an institution of the department is the chief executive officer of that institution, and is responsible for the custody, treatment, training and discipline of all inmates under his or her charge"; and 2) Operational Procedure (OP), 10048, which states, "The purpose and objective of this Operational Procedure (OP) is to establish guidelines to supply authorized inmates with a wholesome, nutritious, and adequate Kosher Diet…" (see Exhibit A attached to the Third Amended Complaint for case 1:20-cv-00023-ADA-GSA-PC (Reyes v. VSP) and signed by Warden Fisher).[6] Therefore, pursuant to CCR 15 § 3380(a), as a warden it was defendant Fisher's responsibility to ensure that the OP policy was being properly and faithfully adhered to.

These two provisions, CCR 15 sec 3380(a) and OP 10048, are more than sufficient to allege a causal connection between Plaintiff's alleged injury and defendant Fisher. (See Henderson v Ayers, 476 F.Supp 2d 1168 (C.D.Cal. 2007), 2007 U.S. Dist. LEXIS 18791).

2. **Moosbauer**

The same is true for Defendant Moosbauer.  As a supervisor in the culinary unit, Moosbauer appears to have responsibility under VSP Operational Procedure (OP) 10048 IV E, which states the following duties of a correctional supervising cook: "The correctional

---

[6] The Court takes judicial notice of this document ECF No. 16 at 17-26, filed in case 1:20-cv-00023-ADA-GSA-PC (Reyes v. VSP), Eastern District of California, on June 14, 2021.  Courts can take judicial notice of records in other cases.  Pimentel-Estrada v. Barr, 458 F.Supp.3d 1226, fn 7 (W.D. Wa, Apr. 28, 2020) (citing see United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).)

Supervising Cooks (CSC) are directly responsible for the proper preparation, quality and quantity of Kosher meals and the service of the meals…".  If so, this makes clear defendant Moosbauer's responsibility to protect Plaintiff.   As a supervisor, and aside from this OP provision, the following allegations found in Plaintiff's FAC are sufficient to state a cognizable claim under the First Amendment: 1) defendant Moosebaur (a vocally proud Neo-Nazi) told his workers (including inmates such as Israel Garcia-Trevino #AY-4957 and other "line backers") that they no longer needed to wear gloves or hair nets while working with the Kosher food;" and 2) "Anguiano was 'trained by Moosebaur to deny requests for replacement meals even when they are rotten, spoiled, spilled, open, contaminated, or otherwise unfit for consumption (or rendered non-kosher)." (ECF No. 10 at 21:13-16.)  As a culinary supervisor, defendant Moosbauer would (likely) be responsible to oversee the actions of members of the culinary staff whose actions are alleged to have involved the following -- "Kosher meals contained food that was rotten, spoiled, and otherwise unfit for human consumption," "Shabbat dinner is served with spoiled meat", "the internal components of the meals are opened, spoiled, and otherwise contaminated", "the meat is supposed to remain vacuum sealed, but it is served to the plaintiff open and with mold growing on it", "items are constantly being stolen out of the Kosher meals"; and "Kosher meals are often heated in Non-Kosher ovens, rendering them religiously contaminated."  Although supervisory government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*, they may be individually liable under section 1983 if there is a causal connection between the supervisor's wrongful conduct and the constitutional violation (see Pauley v. California, No. 2:18-cv-2595 KJN P (E.D. Cal. 2018), 2018 U.S. Dist. LEXIS 193388 at * 8.)  This can be shown by demonstrating that a supervisor's own culpable action in the control of his subordinates was a cause of Plaintiff's injury.  (Id.).  Item 1) above supplies that connection.

### 3.   **Anguiano**

Besides the allegation (No. 6, above) against Defendant Anguiano, who is alleged to be a member of the culinary staff, which fails to allege personal conduct by Anguiano (Anguiano was one of the frontline refusers to replace spoiled and contaminated meals), the FAC alleges

that Anguiano accused Plaintiff of fraud and, consequently, required every Saturday night meal be opened in front of him, but still refused to replace rotten meat when he observed it being served to Plaintiff. (Id. at 15.) The FAC also alleges that Anguiano was "trained by Moosebaur to deny requests for replacement meals even when they are rotten, spoiled, spilled, open, contaminated, or otherwise unfit for consumption (or rendered non-kosher)." (ECF No. 10 at 21:13-16.) Finally, the FAC alleges that Anguiano coordinated with "C/O Paez [who] stood at the serving window and actively prevented Plaintiff from seeking replacements on a regular basis ...." (Id. at 12:25-28.) None of these allegations against defendant Anguiano are sufficiently detailed factually to show that individually Anguiano deprived Plaintiff of his right to exercise his religion under the First Amendment's Exercise Clause. These allegations are more in the form of group allegations and fail to make out specific details such as to when, where, what, and how often these incidents related to the individual actions of Anguiano. Therefore Plaintiff fails to state a cognizable claim against defendant Anguiano.

4. **Cruz**

As for Defendant Cruz, the FAC contains a single sentence describing his alleged specific actions, "Defendant Cruz refused to send replacements (meals) and allowed for the theft of items inside the Kosher meals." (Id. at 13.) This conclusory allegation, without sufficient supporting facts, is not sufficient to show that Defendant Cruz deprived Plaintiff of a right to exercise his religion under the First Amendment.

5. **Paez**

Plaintiff alleges that "Defendant C/O Paez personally stood at the serving window and actively prevented Plaintiff from seeking replacement foods on a regular basis, using threats and retaliation to quell calls for change in active coordination with culinary staff member Anguiano. Plaintiff also alleges that Paez, in response to attempts to have spoiled meals exchanged at the dining hall, used threats of rules violation reports, retaliatory searches (that factually occurred), and threats to have Plaintiff removed from KDP. Plaintiff brings no allegations of any interaction by defendant Paez with Plaintiff concerning his Kosher meals, or any involvement in the preparation or service of the food. Again, Plaintiff must allege personal acts by each defendant,

showing how each individual defendant violated Plaintiff's rights by their separate personal conduct.   Plaintiff has not done so and therefore fails to state any claims against defendant Paez.

6.   **Chapa, Lucero, Marquez**

See  discussion above, No personal participation.

Based on the foregoing, Plaintiff fails to state a First Amendment Free Exercise claim in the FAC against Defendants Anguiano, Chapa, Lucero, Marquez, Cruz, or Paez.  However, the Court finds that Plaintiff does state a First Amendment free exercise claim against defendants Warden Fisher and culinary staff supervisor Moosbauer.

G.   **Eighth Amendment Claims**

1.   **Adverse Conditions of Confinement**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

The state is obligated to provide "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the

inmates who consume it,'" and "the state health code, while not establishing 'constitutional minima,' is relevant in making a finding regarding the constitutionality of existing conditions." Jackson v. Walker, 2009 WL 1743639, at *8 (E.D. Cal. 2009) (citing Somers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997)); also see Foster v. Runnels, 554 F.3d 807, 812-813 (9th Cir. 2009); Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986) (prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety").

However, the Eighth Amendment does not require that the food provided to Plaintiff be tasty and the court does not read Ninth Circuit precedent to require jail officials to provide food that is optimally nutritious. See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing.")

"The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Id. "The occasional presence of a rodent is insufficient to establish the objective component of an Eighth Amendment claim, which requires that a deprivation be sufficiently serious." Jackson, 2009 WL 1743639 at *8. However, "a lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. Cnty. of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995); see also Johnson, 217 F.3d at 731-32; Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985). The Eighth Amendment requires prisoners to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it;" cf. Hutto v. Finney, 437 U.S. 678, 683, 686-87 (1978) (remarking that conditions of confinement that included a 1000-calorie-per-day diet of "'grue,' a substance created by mashing meat, potatoes, oleo, syrup, vegetables, eggs, and seasoning into a paste and baking the mixture in a pan,"... "might be tolerable for a few days and intolerably cruel for weeks or months"). Craver v. Floyd, No. 2:20-CV-02327 DB P, 2021 WL 4133632, at *5 (E.D. Cal. July 21, 2021).

To establish an Eighth Amendment claim for the deprivation of food, a plaintiff must allege facts showing that objectively he suffered a sufficiently serious deprivation and that

subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur.  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); See Johnson, 217 F.3d at 736.)  "The general rule is that a prison official acts wantonly with respect to supplying inadequate food, water and shelter if he has actual knowledge of an excessive risk to inmate health or safety and deliberately disregards that risk."  Id. (quoting Johnson, 217 F.3d at 736 (citing Farmer, 511 U.S. at 837).

Plaintiff alleges that he is hungry when he cannot eat because the food is contaminated or spoiled.  He also alleges that the food is nutritionally deficient, loaded with unhealthy carbs and calorie dumps made from highly processed foods known to cause cancer.  Plaintiff alleges that he injured his mouth and teeth eating meat that contained shards of bone, and suffered indigestion from an inadequate diet.  He alleges that meats are served open with mold on them; uncooked items are not allowed to be re-cooked; and rotten, spoiled, and otherwise unfit for human consumption food is being served in the Kosher diets.  When brought to the attention of the Culinary Supervisor Cook (CSC) and CSC II staff, the meals are not replaced.  Culinary workers intentionally wear their serving gloves to the restroom and touch their "dirty dick" with their hands prior to serving the meals.  Meals supposed to be vacuum-sealed are served open with mold on them.

The Kosher meal stock is delivered in a manner that causes the frozen food to spoil. It is taken from the refrigerated delivery truck and left unrefrigerated in the open sun and out in the elements at the docking area for entire shifts.  After approximately ten hours, the items are finally inventoried and re-frozen.  Upon need of the meals, they  are again left out in the elements and sun as they are transferred, where they spoil further and are refrigerated again for serving on the following day.  The meals that are served are calorie rich and nutrient poor. The meals are basically bread, sugar, and spoiled meat.  Plaintiff's diet consists of high carbohydrate, high calorie, high-processed food without adequate vitamins, minerals, healthy oils, etc., without supplementation.

Plaintiff's allegations that the food is uncooked and/or unsanitary are sufficient to state an Eighth Amendment claim.  Plaintiff alleges that he injured his mouth and teeth and suffered from indigestion.

However, Plaintiff's allegations that he is not provided with enough food to maintain health and that the food is nutritionally inadequate are not sufficient to state a claim.  Plaintiff's allegations that the food is nutritionally inadequate is conclusory and not supported by facts, and there are insufficient facts alleged for the court to plausibly conclude that plaintiff has not received adequate food to maintain health, e.g., Lemaire, 12 F.3d at 1456, or otherwise that there was a sufficiently serious deprivation of food, e.g., Foster, 554 F.3d at 812-13 (denial of 16 meals in 23 days is a sufficiently serious deprivation under the Eighth Amendment).  Plaintiff has not alleged any weight loss from inadequate amounts of food, nor has he complained of other serious effects on his health indicating that the food being provided to Plaintiff is not adequate to maintain his health.

Plaintiff complains of being served partially-frozen meals.  However, because prison food "need not be tasty or aesthetically pleasing," but only adequate to maintain health, cold food is not a deprivation sufficient to constitute cruel and unusual punishment under the Eighth Amendment.   Johnson v. Runnels, No. 2:04-CV-776-LKK-EFB, 2013 WL 3940884, at *11 (E.D. Cal. July 30, 2013), report and recommendation adopted, No. 2:04-CV-776-TLN-EFB, 2013 WL 6576044 (E.D. Cal. Dec. 13, 2013) (quoting  LeMaire, 12 F.3d at 1456).

As discussed above, Plaintiff fails to state any claims against defendants **Chapa, Lucero**, or **Marquez** because Plaintiff has not shown that these three defendants, as individuals, personally participated in violating Plaintiff's rights.  Therefore, Plaintiff fails to state an Eighth Amendment claim against any of these three Defendants.

Plaintiff also fails to allege sufficient facts against defendant **Anguiano** to state a claim for violation of his Eighth Amendment rights.  Plaintiff alleges that defendant Anguiano refused to replace rotten meat served to Plaintiff on one occasion.  Plaintiff also makes other allegations against defendant Anguiano because of his training by defendant Moosbauer and his behavior

when inmates requested a replacement meal.  But Plaintiff has not sufficiently linked defendant Anguiano to personal conduct egregious enough to state an Eighth Amendment claim.

In regard to defendant **Cruz**, as discussed above, the FAC only makes conclusory allegations ("Defendant Cruz refused to send replacements (meals) and allowed for the theft of items inside the Kosher meals") that do not link defendant Cruz to a specific violation of Plaintiff's rights.   (Id. at 13.)  Therefore, Plaintiff fails to state an Eighth Amendment claim against defendant Cruz.

Lastly, in regard to Defendant C/O **Paez**, Plaintiff states that Paez personally stood at the serving window and actively prevented Plaintiff from seeking replacement foods on a regular basis, threatening rules violation reports, retaliatory searches (that factually occurred), and threats to have Plaintiff removed from KDP.  These allegations are conclusory and do not contain sufficient  factual information describing the number and nature of threats against Plaintiff himself.  Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendant Paez.

Based on the foregoing, Plaintiff **fails** to state an Eighth Amendment claim for adverse conditions of confinement in the FAC against Defendants Anguiano, Chapa, Lucero, Marquez, Cruz, or Paez.  However, the Court finds that Plaintiff does state an Eighth Amendment claim against defendants Warden Fisher and culinary staff supervisor Moosbauer based on the provisions located in the VSP Operational Procedure (OP) and CCR 15 § 3380(a), cited above, which are sufficient for purposes of the complaint to allege a causal connection between Plaintiff's alleged injury and the actions of defendants Fisher and Moosbauer. (See Henderson, 476 F.Supp 2d 1168, 2007 U.S. Dist. LEXIS 18791).

### 2.    Failure to Protect from Unsanitary Food – Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan, 465 F.3d at 1045. Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted). "Preventing disease and protecting the health of inmates are legitimate penological goals." McClure v. Tucker, 276 Fed. Appx. 574, 575 (9th Cir.

2008). Robles v. Coughlin, 725 F.2d 12, 15 (2nd Cir. 1983) (per curiam) (The Eighth Amendment requires prisoners to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it.").

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Id. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson, 45 F.3d at 1313. To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

As discussed above, the Eighth Amendment requires prisoners to be provided with nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it. To be liable for failure to protect a prisoner from a risk off serious harm, a defendant must know about the risk and deliberately disregard it. In addition, the defendant must be someone who has the authority and responsibility to protect the prisoner.

Here, the court finds that Plaintiff states cognizable claims against Defendants Fisher and Moosbauer for their failure to protect Plaintiff from a risk of serious harm from unsanitary Kosher foods.  Both defendants are supervisors with the authority and responsibility to protect Plaintiff.

As discussed above regarding Warden Fisher:  1) CCR 15 sec 3380(a) states in pertinent part,  "The warden . . . of an institution of the department is the chief executive officer of that institution, and is responsible for the custody, treatment, training and discipline of all inmates under his or her charge"; and, 2) Operational Procedure (OP) 10048 states, "The purpose and objective of this Operational Procedure (OP) is to establish guidelines to supply authorized inmates with a wholesome, nutritious, and adequate Kosher Diet…"  Plaintiff's Exhibit A attached to the Third Amended Complaint filed on June 14, 2021 in case 1:20-cv-00023-ADA-GSA-PC (Reyes v. VSP) shows that the OP was signed by Warden Fisher, seemingly making Fisher responsible to oversee culinary staff who allegedly provided unsanitary Kosher foods to Plaintiff.  See case 1:20-cv-00023-ADA-GSA-PC (Reyes v. VSP), ECF No. 16 at 17-26.[7]

The same may be said of Defendant Moosbauer who, as a supervisor, is responsible to oversee the actions of members of the culinary staff alleged by Plaintiff to be involved in the following-- "Kosher meals contained food that was rotten, spoiled, and otherwise unfit for human consumption", "Shabbat dinner is served with spoiled meat", "the internal components of the meals are opened, spoiled, and otherwise contaminated", "the meat is supposed to remain vacuum sealed, but it is served to the plaintiff open and with mold growing on it."  Importantly,  as shown above, Operational Procedure 10048, Sec IV. E states in pertinent part, "The Correctional Supervising Cooks (CSC) are directly responsible for the proper preparation, quality and quantity of kosher meals and the service of the meals…."   As with Warden Fisher, this section seemingly makes defendant Moosbauer responsible to protect Plaintiff.

However, for the same reasons as set forth above, the Court finds that Plaintiff does not state an Eighth Amendment claim for failure to protect against any other defendant.

---

[7] The Court has taken judicial notice of this document.

Therefore, the Court finds that Plaintiff states claims only against Defendants Fisher and Moosbauer for failure to protect Plaintiff from risk of harm from unsanitary foods, in violation of the Eighth Amendment, but against no other defendant.

### H.    Retaliation – First Amendment:  Moosbauer

"Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Defendants argue that the retaliation claim against Defendant Moosbauer should be dismissed because (1) Plaintiff's alleged informal complaints to Moosebauer do not qualify as a protected activity; (2) Plaintiff's conclusory allegations that because he submitted grievances Moosebaur retaliated against him are insufficient to state a claim; (3) the mere submission of grievances is insufficient to establish a defendant's knowledge; and (4) Plaintiff has not shown there were no legitimate correctional purposes for Moosbauer's actions.

Plaintiff alleges that in retaliation for repeated complaints and grievances, defendant Moosebaur (a vocally proud Neo-Nazi) told his workers (including inmates such as Israel Garcia-Trevino #AY-4957 and other "line backers") that they no longer needed to wear gloves or hair nets while working with the Kosher food.  (ECF No. 10 at 15:13-16.)  In addition, Plaintiff alleges that defendant Moosebauer gave foods to his favorite workers that should have been used as replacements for spoiled  meals causing Plaintiff to be forced to either eat spoiled meals or not to eat. (Id. at 15:16-19.)

Defendants move to dismiss Plaintiff's retaliation claim against Defendant Moosbauer on the ground that oral threats to complain to prison officials and/or threats to file a complaint do not amount to constitutionally protected activity. In support of their argument, Defendants argue that Plaintiff's informal complaints to Defendant Moosbauer do not qualify as a protected activity under the First Amendment.  Defendants cite Johnson v. Carroll, No. 2:08-CV-1494 KJN P, 2012 WL 2069561, at *33 (E.D. Cal. June 7, 2012), for its holding that prisoners have no protected First Amendment right to verbally challenge correctional staff.  In Johnson, the plaintiff contended that his "verbal complaints and challenges to the excessive and harassing strip searches performed by Officer Johnson was protected speech" and, therefore, that defendants' immediate responses thereafter are actionable under a First Amendment retaliation claim.  Id. The Court found that plaintiff's statements to defendant Johnson, incident to the subject search, were not protected speech, and that the plaintiff failed to state a First Amendment retaliation claim based on the conduct that allegedly occurred immediately after the search.  Id. at 34.

However, the Court finds Defendants' reliance on this decision unpersuasive.  The Johnson decision was followed by the Ninth Circuit's decision in Entler v. Gregoire, 872 F.3d 1031 (9th Cir. Oct. 6, 2017), holding that both "verbal . . .[and] written . . .threats to sue fall within the purview of the constitutionally protected right to file grievances." Id. at 1039-40.  The Court clarified that its holding was not expressly limited to threats to file a lawsuit.  Instead, because of the exhaustion requirement inherent in any prison lawsuit, the threat to file a grievance is implicitly a threat to sue.  Id.

Entler held that there is "no material distinction between retaliation in the Title VII context and prisoner retaliation," and Ninth Circuit jurisprudence has long held that "making an informal complaint to a supervisor is a protected activity under Title VII anti-retaliation provision."  Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000) (citing Equal Employment Opportunity Commission v. Hacienda Hotel, 881 F.2d 1504, 1514 (9th Cir. 1989)); see also Jones, 791 F.3d at 1035-36 ("Jones' verbal complaints of discrimination to the Penitentiary's Food Services Manager and statements on intention to file suit were conduct protected by the First Amendment."); Halloum v. Ryan, 2014 WL 1047144, *5 (D. Ariz. 2014).  ("[A] number of

courts have concluded that verbal statements made by an inmate that essentially constitute a grievance, or that indicate an intent to file a formal written grievance, are protected by the First Amendment.") Loftis v. Montes, No. 218CV4769JFWGJS, 2020 WL 1290842, at *3–4 (C.D. Cal. Feb. 11, 2020), report and recommendation adopted, No. 218CV4769JFWGJS, 2020 WL 1289170 (C.D. Cal. Mar. 18, 2020).

Courts have found protected activity where an informal complaint was submitted as a verbal complaint to a superior. See Gathrite v. Wilson, No. 3:19-cv-01852-JAH-NLS, 2020 WL 4201668 (S.D. Cal. July 22, 2020); see also Ahmed v. Ringler, No. 2:13-CV-1050 MCE DAD, 2015 WL 502855, at *4 (E.D. Cal. Feb. 5, 2015) (finding inmate's verbal complaints about improper search of cell and seizure of his property to superior constituted protected conduct); see also Hackworth v. Torres, No. 1:06-cv-773 RC, 2011 WL 1811035, at *1 (E.D. Cal. May 12, 2011) (rejecting defendant's argument that prisoner's verbal objections to a prison policy during housing classification committee meeting with prison staff was not protected by the First Amendment because the inmate had not filed a written grievance); see also Leslie v. Claborne, 1:19-cv-00366-NONE-GSA-PC, 2021 WL 4523720, at *4 (E.D. Cal. Oct. 4, 2021) (finding plaintiff's reporting of officer misconduct to a captain was protected); see also Uribe v. McKesson, No. 08-cv-1285 DMS (NLS), 2011 WL 9640, at *12 (prisoner's attempt to report a prison official's misconduct, either "verbally or in writing, constitutes speech or conduct entitled to First Amendment protection.").

Here, however, the Court finds that Plaintiff fails to state a cognizable claim for retaliation against Defendant Moosbauer. Even if Plaintiff's repeated complaints and grievances to defendant Moosbauer about the condition of the Kosher foods being served constitute a protected action under the First Amendment, Plaintiff has not established a sufficient nexus between his complaints and grievances and the alleged adverse action taken by Defendant Moosbauer. Moreover, the assertion that defendant Moosbauer told his workers that they no longer needed to wear gloves or hair nets while working with Kosher foods does not, other than by assumption and speculation, demonstrate that Plaintiff's complaints and grievances were the driving force, or even a remote cause of Moosbauer's conduct as described above. A nexus between these two

has not been established.  This is the same for the claim that inmate workers intentionally wore their serving gloves when going to the restroom and then prepared Plaintiff's food with those gloves on.   Therefore, the Court finds that Plaintiff fails to state a claim for retaliation in the FAC against Defendant Moosbauer.

## V.       CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court finds that Plaintiff states claims in the First Amended Complaint against Defendant Warden Raythel Fisher, Jr. and Culinary Worker Moosbauer for violation of Plaintiff's right to exercise his religion under the First Amendment, adverse conditions of confinement in violation of the Eighth Amendment, and failure to protect Plaintiff in violation of the Eighth Amendment, but no other claims against any of the Defendants upon which relief may be granted.  In this action, the Court previously granted Plaintiff an opportunity to amend the complaint, with guidance by the Court.  Plaintiff has now filed two complaints.  The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.   28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1.       Defendants' Rule 12(b)(6) motion to dismiss, filed on March 14, 2022, be granted in part, without leave to amend;

2.       This case proceed only against defendants Warden Raythel Fisher, Jr. and Culinary Worker Moosbauer for violation of Plaintiff's right to exercise his religion under the First Amendment, adverse conditions of confinement in violation of the Eighth Amendment, and failure to protect Plaintiff in violation of the Eighth Amendment, but no other claims against any Defendant upon which relief may be granted;

3.       All other claims and defendants be dismissed, without leave to amend;

4.       Defendants Paez, Anguiano, Chapa, Lucero, Marquez, and Cruz be dismissed from this case, with prejudice;

///

41

5.      Plaintiff's claims for injunctive relief, violation of RLUIPA, and retaliation be dismissed from this case, with prejudice; and

6.      This case be referred back to the Magistrate Judge for further proceedings.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 16, 2023**              **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE